UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
ERSEL OK, MUHAMMET YILMAZ, EMRE ISLER, :
EYYUP YENICERI, and IBRAHIM GECIT, :
                                           :
                  Plaintiffs, :
                                           :
           -against- :          **COMPLAINT**
                                           :
NUSRET NEW YORK LLC d/b/a NUSR-ET :
STEAKHOUSE NEW YORK, SALTBAE NY LLC :
d/b/a SALTBAE BURGER, NUSRET MIAMI LLC :
d/b/a NUSR-ET STEAKHOUSE MIAMI, NUSRET :
DALLAS LLC d/b/a NUSR-ET STEAKHOUSE :
DALLAS, and NUSRET GOKCE a/k/a SALT BAE :
                                           :
                  Defendants. :
------------------------------------------------------------------- X

        Plaintiffs Ersel Ok, Muhammet Yilmaz, Emre Isler, Eyyup Yeniceri, and Ibrahim Gecit (collectively, "Plaintiffs"), by their attorneys Pechman Law Group PLLC, complaining of Defendants Nusret New York LLC d/b/a Nusr-Et Steakhouse New York, Saltbae NY LLC d/b/a Saltbae Burger, Nusret Miami LLC d/b/a Nusr-Et Steakhouse Miami, Nusret Dallas LLC d/b/a Nusr-Et Steakhouse Dallas, and Nusret Gokce a/k/a Salt Bae (collectively, "Defendants"), allege:

## NATURE OF THE COMPLAINT

        1.     Plaintiffs are five Turkish citizens recruited by Defendants to relocate to the United States to work at Defendants' internationally renowned restaurants, which rose to fame when Defendant Nusret Gokce became an internet sensation due to his unique method of seasoning meats. Upon their arrival in the United States, Defendants assigned Plaintiffs to work grueling hours in non-managerial griller positions at the restaurants. Throughout their employment, Defendants misclassified Plaintiffs as exempt workers to avoid paying them legally required overtime pay, instead unlawfully paying Plaintiffs on a salary basis while requiring them to work seventy-two hours or more per workweek.

2.      Throughout their employment with Defendants as grillers, Plaintiffs regularly worked at least seventy-two hours per workweek but were denied: (i) overtime compensation for hours worked in excess of forty per workweek, and (ii) spread-of-hours pay on days when their shifts spanned over ten hours.  Defendants further failed to provide Plaintiffs with accurate wage notices at their time of hiring, and failed to keep accurate records of Plaintiffs' hours worked and provide Plaintiffs with accurate wage statements with each payment of wages.

3.      Plaintiffs bring this action to recover their unpaid overtime wages, spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), the New York Labor Law, §§ 190 and 650, *et seq.* ("NYLL"), and the NYLL's Wage Theft Prevention Act ("WTPA").

## JURISDICTION

4.      This Court has subject matter jurisdiction of this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367.

## VENUE

5.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because Nusr-Et Steakhouse New York and Saltbae Burger are located and operated by Defendants in the Southern District of New York and a substantial part of the events giving rise to this action occurred in the Southern District of New York.

THE PARTIES

**Plaintiff Ersel Ok**

6.      Ok resides in Queens County, New York.

7.      Defendants employed Ok as a griller from approximately May 13, 2018 to July 21, 2021.

**Plaintiff Muhammet Yilmaz**

8.      Yilmaz resides in Queens County, New York.

9.      Defendants employed Yilmaz as a griller from approximately April 25, 2019 to July 27, 2021.

**Plaintiff Emre Isler**

10.      Isler resides in Queens County, New York.

11.      Defendants employed Isler as a griller from approximately April 23, 2019 to July 29, 2021.

**Plaintiff Eyyup Yeniceri**

12.      Yeniceri resides in Queens County, New York.

13.      Defendants employed Yeniceri as a griller from approximately October 19, 2019 to July 30, 2021.

**Plaintiff Ibrahim Gecit**

14.      Gecit resides in Miami-Dade County, Florida.

15.      Defendants employed Gecit as a griller from approximately April 4, 2018 to July 24, 2021.

**Defendant Nusret New York LLC d/b/a Nusr-Et Steakhouse New York**

16.      Defendant Nusret New York LLC is a foreign limited liability company incorporated under Delaware law that is authorized to do business in New York State.

17.     Nusret New York LLC owns, operates, and does business as Nusr-Et Steakhouse New York ("Nusr-Et New York"), located at 60 W. 53rd Street, New York, New York 10019.

18.     Nusr-Et New York is one of approximately nineteen upscale steakhouses owned and operated by Defendants around the world.

19.     Nusr-Et New York is an "enterprise engaged in interstate commerce" within the meaning of the FLSA, and employed Plaintiffs Ok, Yilmaz, Isler, and Yeniceri.

20.     Nusr-Et New York has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

21.     In the three years preceding the filing of this Complaint, Nusr-Et New York has had an annual gross volume of sales in excess of $500,000.

**Defendant Saltbae NY LLC d/b/a Saltbae Burger**

22.     Defendant Saltbae NY LLC is a domestic limited liability company incorporated under New York law.

23.     Saltbae NY LLC owns, operates, and does business as Saltbae Burger ("Saltbae Burger"), located at 220 Park Avenue South, New York, New York 10003.

24.     Saltbae Burger is an "enterprise engaged in interstate commerce" within the meaning of the FLSA, and employed Plaintiffs Ok, Yilmaz, and Yeniceri.

25.     In the three years preceding the filing of this Complaint, Saltbae Burger has had an annual gross volume of sales in excess of $500,000.

**Defendant Nusret Miami LLC d/b/a Nusr-Et Steakhouse Miami**

26.     Defendant Nusret Miami LLC is a foreign limited liability company incorporated under Florida law.

27.     Nusret Miami LLC owns, operates, and does business as Nusr-Et Steakhouse Miami ("Nusr-Et Miami"), located at 999 Brickell Avenue, Miami, Florida 33131.

28.     Nusr-Et Miami is an "enterprise engaged in interstate commerce" within the meaning of the FLSA, and employed Plaintiffs Yilmaz, Yeniceri, and Gecit.

29.     Nusr-Et Miami has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

30.     In the three years preceding the filing of this Complaint, Nusr-Et Miami has had an annual gross volume of sales in excess of $500,000.

**Defendant Nusret Dallas LLC d/b/a Nusr-Et Steakhouse Dallas**

31.     Defendant Nusret Dallas LLC is a foreign limited liability company incorporated under Delaware law and authorized to do business in Texas.

32.     Nusret Dallas LLC owns, operates, and does business as Nusr-Et Steakhouse Dallas ("Nusr-Et Dallas"), located at 1900 North Pearl Street, Dallas, Texas 75201.

33.     Nusr-Et Dallas is an "enterprise engaged in interstate commerce" within the meaning of the FLSA, and employed Plaintiff Yilmaz.

34.     Nusr-Et Dallas has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

35.     Nusr-Et Dallas has an annual gross volume of sales in excess of $500,000.

**Defendant Nusret Gokce a/k/a Salt Bae**

36.     Defendant Nusret Gokce a/k/a Salt Bae is a celebrity chef who, on information and belief, owns, operates, and controls the operations and management of

Nusr-Et New York, Saltbae Burger, Nusr-Et Miami, and Nusr-Et Dallas (collectively, the "Restaurants").

37.     Throughout Plaintiffs' employment, Gokce visited the Restaurants and led meetings with employees where he instructed employees, including Plaintiffs, on how to carry out their job duties.

38.     Gokce held and exercised power and authority over personnel decisions at the Restaurants, including the power to discipline employees, hire and fire employees, set employee wage rates, retain time and/or personnel records, and otherwise control the conditions of their employment.

39.     Gokce exercised this power and authority personally and through managers at the Restaurants.

40.     For example, Gokce hired Plaintiffs and provided Plaintiffs with letters in support of their I-129 O-2 nonimmigrant visa petitions to relocate from Turkey to New York to work for Defendants.

41.     When Gokce was present at the Restaurants, he personally supervised Plaintiffs' work.   Gokce had an aggressive managerial style, frequently cursing at Plaintiffs and blaming them for other employees' mistakes.

42.     Although Plaintiffs regularly worked twelve-hour shifts, when Gokce was present at the Restaurants both Gokce and the Restaurant managers instructed Plaintiffs to work additional hours because the "boss" was present.  Plaintiffs were also instructed to cook special meals for Gokce.

## STATEMENT OF FACTS

43.     Plaintiffs are five Turkish citizens, all of whom worked at Nusr-Et Steakhouse in Istanbul, Turkey prior to their recruitment by Defendants to relocate to the United States.

44.     In 2018 and 2019, Defendants recruited Plaintiffs to relocate from Turkey to the United States to work at the Restaurants.  Gokce personally encouraged Plaintiffs to relocate to the United States to work for the Restaurants.

45.     Nusr-Et New York served as the Petitioner for Plaintiffs' O-2 nonimmigrant visa petitions seeking authorization for Plaintiffs to relocate from Turkey to the United States to work at the Restaurants.

46.     Gokce submitted personal letters on behalf of Plaintiffs in support of their O-2 visa petitions.

47.     In Plaintiffs' O-2 visa petitions, Defendants represented that Plaintiffs would be employed in the role of "Grill Master" at the Restaurants.

48.     For example, the O-2 petition submitted by Nusr-Et New York on behalf of Plaintiff Ok represented that Nusr-Et New York was seeking a temporary nonimmigrant visa classification for Plaintiff Ok because of his "unparalleled expertise and in-depth, first-hand knowledge of Mr. Gokce's culinary techniques" in order that Plaintiff Ok could "provide critical assistance as Mr. Gokce's Grill Master."

49.     After they arrived in the United States, Defendants required Plaintiffs to execute documents titled "Job Description" purporting to establish that Plaintiffs were employed as "sous chefs" for the Restaurants, and falsely indicating that Plaintiffs would have supervisory and management authority in their roles at the Restaurants.

50.     This misrepresentation was an attempt by Defendants to paint Plaintiffs as employees with managerial authority in order to misclassify Plaintiffs as exempt and avoid paying them overtime wages.

51.     In reality, however, Defendants employed Plaintiffs as grillers at the Restaurants, a non-managerial position.

52.     Plaintiffs' primary duty as grillers was to grill meats in the Restaurants' kitchens.

53.     Plaintiffs' employment and job duties were directly supervised and controlled by Gokce and managers at the Restaurants.  Plaintiffs did not have any authority or discretion to make decisions about the Restaurants' operations.

54.     Plaintiffs did not have the authority to make hiring or firing decisions at the Restaurants or to otherwise exercise control over personnel decisions.

55.     Plaintiffs did not have the authority to set the work schedules or determine the pay rates of other employees at the Restaurants.

56.     Plaintiffs were assigned to other tasks by managers at the Restaurants.  For example, managers assigned Plaintiffs to take out garbage, wash dishes, clean stove hoods, clean toilets, prepare special meals for the managers and Gokce when he was present, and run errands and purchase products when there were shortages at the Restaurants.

57.     During the Covid-19 pandemic and periods of social unrest in New York, managers assigned Plaintiffs to perform security work at Nusr-Et New York and Saltbae Burger, including staying at the restaurants overnight, to ensure that the buildings were not vandalized.

**Plaintiff Ok's Hours Worked and Pay**

58.    Defendants employed Plaintiff Ok as a griller at Nusr-Et New York and Saltbae Burger from May 13, 2018 to July 21, 2021.

59.    Throughout his employment, Plaintiff Ok regularly worked twelve-hour shifts, six days per week, at the Restaurants, totaling approximately seventy-two hours per workweek.  Plaintiff Ok occasionally worked an additional twelve-hour shift per workweek.  When Gokce was present, Plaintiff OK worked longer shifts, normally between fifteen and sixteen hours per day, totaling approximately ninety hours per workweek during these periods.

60.    From approximately May 13, 2018 through December 2018, Defendants paid Plaintiff Ok a weekly salary of $975.00.

61.     From approximately January 2018 through the end of his employment, Defendants paid Plaintiff Ok a weekly salary of $1,125.00.

**Plaintiff Yilmaz's Hours Worked and Pay**

62.    Defendants employed Plaintiff Yilmaz as a griller at Nusr-Et New York, Saltbae Burger, Nusr-Et Miami, and Nusr-et Dallas from approximately April 25, 2019 to present.

63.    Defendants initially assigned Plaintiff Yilmaz to work as a griller at Nusr-Et New York and Saltbae Burger.

64.    On or around December 15, 2020, Defendants transferred Plaintiff Yilmaz and assigned him to work as a griller at Nusr-Et Miami.

65.    Plaintiff Yilmaz worked as a griller at Nusr-Et Miami until on or about March 3, 2021, when Defendants again transferred him and assigned him to work as a griller at Nusr-Et Dallas.

66.    Throughout his employment, Plaintiff Yilmaz regularly worked twelve-hour shifts, six days per week at the Restaurants, totaling approximately seventy-two hours per workweek.  Plaintiff Yilmaz occasionally worked an additional twelve-hour shift per workweek.  When Gokce was present, Plaintiff Yilmaz worked longer shifts, normally between fifteen and sixteen hours per day, totaling approximately ninety hours per workweek during these periods.

67.    Throughout his employment, Defendants paid Plaintiff Yilmaz a weekly salary of $1,125.00.

**Plaintiff Isler's Hours Worked and Pay**

68.    Defendants employed Plaintiff Isler as a griller at Nusr-Et New York from approximately April 23, 2019 to July 29, 2021.

69.    Throughout his employment, Plaintiff Isler regularly worked twelve-hour shifts, six days per week, at Nusr-Et New York, totaling approximately seventy-two hours per workweek.  Plaintiff Isler occasionally worked an additional twelve-hour shift per workweek.  When Gokce was present, Plaintiff Isler worked longer shifts, normally between fifteen and sixteen hours per day, totaling approximately ninety hours per workweek during these periods.

70.    Throughout his employment, Defendants paid Plaintiff Isler a weekly salary of $1,125.00.

**Plaintiff Yeniceri's Hours Worked and Pay**

71.    Defendants employed Plaintiff Yeniceri as a griller at Nusr-Et New York, Saltbae Burger, and Nusr-Et Miami from approximately October 19, 2019 to July 30, 2021.

72.    Defendants initially assigned Plaintiff Yeniceri to work as a griller at Nusr-Et Miami.

73.     On or about February 18, 2020, Defendants transferred Plaintiff Yeniceri and assigned him to work as a griller at Nusr-Et New York and Saltbae Burger.

74.     Throughout his employment, Plaintiff Yeniceri regularly worked twelve-hour shifts, six days per week, at the Restaurants, totaling approximately seventy-two hours per workweek.  Plaintiff Yeniceri occasionally worked an additional twelve-hour shift per workweek.  When Gokce was present, Plaintiff Yeniceri worked longer shifts, normally between fifteen and sixteen hours per day, totaling approximately ninety hours per workweek during these periods.

75.     Throughout his employment, Defendants paid Plaintiff Yeniceri a weekly salary of $1,125.00.

**Plaintiff Gecit's Hours Worked and Pay**

76.     Defendants employed Plaintiff Gecit as a griller at Nusr-Et Miami from approximately April 4, 2018 to July 24, 2021.

77.     Throughout his employment, Plaintiff Gecit regularly worked twelve-hour shifts, six days per week, at Nusr-Et Miami, totaling approximately seventy-two hours per workweek.  Plaintiff Gecit occasionally worked an additional twelve-hour shift per workweek.  When Gokce was present, Plaintiff Gecit worked longer shifts, normally between fifteen and sixteen hours per day, totaling approximately ninety hours per workweek during these periods.

78.     From approximately April 4, 2018 through February 2020, Defendants paid Plaintiff Gecit a weekly salary of $925.00.

79.     From approximately March 2020 through the end of his employment, Defendants paid Plaintiff Gecit a weekly salary of $1,125.00.

**Wage Notices and Wage Statements**

80.     Defendants did not provide Plaintiffs with a wage notice at their time of hire properly reflecting, *inter alia*, Plaintiffs' regular hourly and overtime wage rates.

81.     Defendants did not provide Plaintiffs with accurate wage statements with each payment of wages reflecting, *inter alia*, total hours worked by Plaintiffs per workweek.

**The Restaurants Operated as a Single Integrated Enterprise**

82.     The Restaurants operated as a single integrated enterprise employing Plaintiffs.

83.     Although registered as individual corporate entities, on information and belief the Restaurants at all relevant times were under common ownership and management.

84.     For example, the New York State Liquor Authority's Division of Alcoholic Beverage Control identifies Nusret Holdings USA, LLC as a principal of both Nusr-et New York and Saltbae Burger.

85.     Defendant Gokce exercises operational control and authority, both personally and through managers, over each of the Restaurants, including control and authority over personnel policies and practices at the Restaurants. For example, Defendant Gokce hired Plaintiffs.  Defendant Gokce visited each of the Restaurants, led meetings with employees, and instructed Plaintiffs on their job duties at each of the Restaurants.

86.     The common control and management of the Restaurants is reflected in the common control of labor relations among the Restaurants.

87.     For example, the Restaurants share a common website which, in addition to advertising the various Nusr-Et Steakhouse and Burger locations, contains an "HR"

(human resources) link through which applicants are invited to submit resumes for employment consideration. *See* https://www.nusr-et.com.tr/en/home.aspx#career2 (last accessed August 11, 2021).

88. Defendants transferred Plaintiffs Ok, Yilmaz, and Yeniceri between different Restaurants.

89. The Restaurants utilize a common employee handbook.

90. The Restaurants utilize a common Human Resources Manager, Cara Fratino.

91. Defendants required all Plaintiffs, regardless of the Restaurant where they were working, to enroll in a common Paycom.com system where human resources and personnel information was maintained.

92. Although Defendants assigned Plaintiffs to work at the different Restaurants upon their arrival in the United States, Nusr-Et New York served as the petitioner on each Plaintiff's O-2 visa application.

93. Regardless of the Restaurant where a Plaintiff was assigned to work, Plaintiffs' paystubs reflected payments from Nusr-Et New York throughout their employment with Defendants.

**FIRST CLAIM**
**Fair Labor Standards Act – Unpaid Overtime Wages**

94. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

95. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a), and employed Plaintiffs.

96. Plaintiffs were employees within the meaning of the FLSA.

97. Defendants were required to pay Plaintiffs overtime wages at a rate of one and one-half (1½) times their regular rate for all hours worked in excess of forty hours in

a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. §
207, *et seq.*

98.    Defendants failed to pay Plaintiffs the overtime wages to which they were
entitled under the FLSA.

99.    Defendants willfully violated the FLSA by knowingly and intentionally
failing to pay Plaintiffs overtime wages.

100.    As a result of Defendants' willful violations of the FLSA, Plaintiffs are
entitled to recover their unpaid overtime wages, liquidated damages, reasonable
attorneys' fees and costs of the action, and pre- and post-judgment interest.

**SECOND CLAIM**
**New York Labor Law – Unpaid Overtime Wages**

101.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set
forth herein.

102.    Defendants are employers within the meaning of the NYLL §§ 190(3) and
651(6) and supporting New York State Department of Labor ("NYDOL") regulations, and
employed Plaintiffs.

103.    Under applicable NYDOL regulations, including 12 NYCRR § 146-1.4,
Defendants were required to pay Plaintiffs overtime wages at a rate of one and one-half
(1 ½) times their regular rate of pay for all hours worked in excess of forty per workweek.

104.    Defendants failed to pay Plaintiffs the overtime wages to which they were
entitled under the NYLL and its supporting regulations.

105.    Defendants willfully violated the NYLL and its supporting regulations by
knowingly and intentionally failing to pay Plaintiffs overtime wages.

106.    As a result of Defendants' willful violations of the NYLL, Plaintiffs are
entitled to recover unpaid overtime wages, liquidated damages, reasonable attorneys'
fees and costs of the action, and pre- and post-judgment interest.

**THIRD CLAIM**
**New York Labor Law – Spread of Hours Pay**

107.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

108.    Under applicable NYDOL regulations, including 12 NYCRR § 146-1.6, Defendants were required to pay Plaintiffs "spread-of-hours" pay, an additional hour of pay at the basic minimum wage rate, on each day on which Plaintiffs worked shifts spanning over ten hours.

109.    Defendants willfully failed to pay Plaintiffs spread-of-hours pay for each day during which their shifts spanned over ten hours.

110.    Due to Defendants' failure to pay Plaintiffs spread-of-hours pay, Defendants willfully violated NYLL § 650 *et seq.*, of the NYLL and its supporting regulations.

111.    As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgement interest.

**FOURTH CLAIM**
**New York Wage Theft Prevention Act – Failure to Provide Wage Statements**

112.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

113.    The NYLL and the WTPA require employers to provide employees with an accurate wage statement with each payment of wages.

114.    Throughout Plaintiffs employment, Defendants failed to provide Plaintiffs with accurate wage statements with each payment of wages reflecting, *inter alia*, their regular and overtime rate or rates of pay; the number of regular and overtime hours

worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of NYLL § 195(3).

115.    As a result of Defendants' violations of NYLL § 195(3), Plaintiffs are entitled to recover statutory damages and reasonable attorneys' fees and costs of the action, pursuant to NYLL § 198(1-d).

**FIFTH CLAIM**
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices**

116.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

117.    The NYLL and the WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

118.    Defendants failed to furnish Plaintiffs, at the time of their hiring, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of NYLL § 195(1).

119.    As a result of Defendants' violations of NYLL § 195(1), Plaintiffs are entitled to recover statutory damages and reasonable attorneys' fees and costs of the action, pursuant to the NYLL § 198(1-b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

a.      declaring that Defendants have violated the overtime wage provisions of the FLSA, the NYLL, and supporting regulations;

b.      declaring that Defendants have violated the spread-of-hours pay provisions of the NYLL and supporting regulations;

c.      declaring that Defendants have violated the notice and record-keeping provisions of the NYLL and WTPA;

d.      declaring that Defendants' violations of the FLSA and the NYLL were willful;

e.      enjoining and permanently restraining Defendants' violations of the FLSA and NYLL;

f.      awarding Plaintiffs damages for unpaid overtime wages;

g.      awarding Plaintiffs unpaid spread-of-hours pay;

h.      awarding Plaintiffs statutory damages as a result of Defendants' failure to furnish Plaintiffs with wage notices and accurate wage statements in violation of the NYLL and WTPA;

i.      awarding Plaintiffs liquidated damages;

j.      awarding Plaintiffs pre- and post-judgment interest;

k.      awarding Plaintiffs reasonable attorneys' fees and costs; and

l.      awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues as of right by jury.

Dated: New York, New York
      August 17, 2021

                         PECHMAN LAW GROUP PLLC

                By:   /s/ *Louis Pechman*
                    Louis Pechman
                    Galen C. Baynes
                    Pechman Law Group PLLC
                    488 Madison Avenue - 17th Floor
                    New York, New York 10022
                    (212) 583-9500
                    pechman@pechmanlaw.com
                    baynes@pechmanlaw.com
                    *Attorneys for Plaintiffs*